```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


A.B. et al.                   *
                              *
v.                            *   Civil Action No. WMN-14-3851
                              *
THE BALTIMORE CITY BOARD      *
OF SCHOOL COMMISSIONERS et al.*
                              *

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

## MEMORANDUM AND ORDER

Plaintiff A.B. is a 17 year old student, diagnosed with Down Syndrome, who is currently attending the St. Elizabeth School (St. Elizabeth), a non-public special education school. A.B.'s parents, individually and on behalf of A.B., filed this action pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., seeking, inter alia, an order that the Baltimore City Public School System (BCPSS)[1] be compelled to cover the tuition and costs for A.B. to attend St. Elizabeth during the pendency of the administrative proceedings currently ongoing regarding A.B.'s proper educational placement. That issue is the focus of Plaintiffs' motion for preliminary

---

[1] The actual entity named as a Defendant in this action is the Baltimore City Board of School Commissioners (BCBSC). For purposes of this memorandum, the Court will reference BCPSS, the school system administered by BCBSC.

injunction, ECF No. 3, which is pending before this Court.[2]  A hearing was held on that motion on February 3, 2015.  Upon review of the papers, facts, argument of counsel, and the applicable law, the Court determines that the motion should be granted.

During the 2013-2014 school year, which was A.B.'s first year of high school, a disagreement arose between Plaintiffs and Defendants concerning the Individualized Educational Program (IEP) developed for A.B. and BCPSS's high school placement recommendation.  As a result of that disagreement, A.B.'s parents unilaterally placed her in the St. Elizabeth School.  The parents then filed a request for mediation and, as a result of that mediation, the parties entered into an agreement on February 7, 2014, pursuant to which BCPSS agreed to reimburse the parents for tuition at St. Elizabeth for the 2013-14 year

---

[2] This motion relates primarily to the relief sought in Count 2 of the Complaint which alleges a "Violation of the IDEA's Stay-Put Provision."  In addition to the relief sought in that count and in this motion, Plaintiffs also included in their Complaint claims of: "Deprivation of Plaintiffs' Right to a Free Appropriate Public Education without Due Process of Law" (Count 1); "Violation of Section 504 of the Rehabilitation Act" (Count 3); and "Damages Under 42 U.S.C. § 1983" (Count 4).  Also named as Defendants are Gregory E. Thornton, the Chief Executive Officer of BCPSS, and Kim Hoffman, the Executive Director of the Special Education Department within the Academics Office of BCPSS.  These other claims and Defendants' various defenses to those claims are the subject of Defendants' recently filed motion to dismiss.  ECF No. 14.  That motion is not yet ripe.

2

only.  Pursuant to that agreement, BCPSS covered the St. Elizabeth tuition through June 2014.

During the 2013-14 school year, BCPSS conducted several observations of A.B. at St. Elizabeth and several IEP meetings were held.  As the outcome of those IEP meetings, BCPSS offered an IEP that removed A.B. from a high school diploma track and placed her in a functional life skills program in a public separate day school.  Unhappy with that placement, the parents again unilaterally placed A.B. in St. Elizabeth for the 2014-15 school year which began on July 7, 2014.

On August 7, 2014, the parents filed a request for a due process hearing under the IDEA.  The merits of that due process request are currently being litigated before the Maryland Office of Administrative Hearings (OAH).  <u>A.B. v. Baltimore City Pub. Sch. Sys.</u>, OAH Case. No. MSDE-CITY-OT-14-27815.  Along with the request for a due process hearing, Plaintiffs also filed a "Motion for Enforcement of Procedural Safeguards" in which they sought an order requiring BCPSS to fund and maintain A.B. at St. Elizabeth during the pendency of those proceedings.  This motion was brought pursuant to § 1415(j) of the IDEA which provides: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for

initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j). This provision allowing a student to remain in their current educational placement is commonly known as the "stay put" provision. BCPSS opposed Plaintiffs' Motion for Enforcement of Procedural Safeguards and a hearing was held on that motion before Administrative Law Judge (ALJ) Michael W. Burns on November 3, 2014.

After hearing argument from the parties, ALJ Burns issued an opinion from the bench. He stated that the Plaintiffs' "motion for procedural safeguards is granted to the extent stay put provision of federal law and regulation is to be enforced" and "the student gets to stay at St. Elizabeth School as appropriate under the stay put provision." ECF No. 6-1 at 29 - 30. As to the issue of tuition, however, he stated that "I'm not getting into that," although he opined that "I would expect that Baltimore City would not raise an issue as to paying that." Id. When asked by counsel for BCPSS to clarify his ruling regarding the payment of tuition, the ALJ opined that he did not believe that he had the authority to order Baltimore City to pay but simply reiterated "I sure have jurisdiction to order stay put, and I've done so. Absolutely. Absolutely. This is not a difficult case. And that's my ruling on that." Id. at 31.

Counsel for Plaintiffs then asked ALJ Burns to confirm that "if that's her stay put, then the obligation is for the City to fund that placement going forward as stay put, to maintain that current educational placement." Id. ALJ Burns replied, "My order is as follows: The child, A.B., must remain in his or her current educational placement. That is my ruling in this matter." Id.

ALJ Burn's expectation that the BCPSS would understand its obligation to cover A.B.'s tuition at St. Elizabeth proved overly optimistic. After several attempts on the part of Plaintiffs' counsel to contact counsel for BCPSS and confirm BCPSS's intent to comply with its obligations to cover A.B.'s tuition expenses, BCPSS counsel finally responded on November 29, 2014, stating that BCPSS would not be rendering any payments for A.B. at St. Elizabeth. ECF No. 1-4. Plaintiffs then filed this suit, along with their motion for a preliminary injunction on December 10, 2014. The Court finds that Plaintiffs are unquestionably entitled to the relief requested in this motion.

It is undisputed that the IDEA's "'stay put' provision affords an 'automatic' preliminary injunction to maintain the child's placement, eliminating the need for parents to make the usual showing required for obtaining preliminary injunctive relief." Bd. of Educ. of Montgomery Cnty. v. Brett Y., 959 F. Supp. 705, 709 (D. Md. 1997) (citing Honig v. Doe, 484 U.S. 305,

5

326 (1988)).  The stay put provision is viewed as a "tool for preserving the status quo" and, consistent with that purpose, "when presented with an application for section 1415(j) relief, a district court should simply determine the child's then-current educational placement and enter an order maintaining the child in that placement."  Wagner v. Bd. of Educ. Of Montgomery Cnty., 335 F.3d 297, 302, 301 (4th Cir. 2003).  The question before this Court then becomes: what is A.B.'s current educational placement?  That was the precise question presented to ALJ Burns in Plaintiffs' Motion for Enforcement of Procedural Safeguards and he determined with no uncertainty, as quoted above, that St. Elizabeth "[a]bsolutely" was her "stay put" and that "A.B., must remain in [] her current educational placement."

　　Defendants concede as they must that, consistent with ALJ Burns' order, St. Elizabeth is now A.B.'s current educational placement.  Notwithstanding that concession, Defendants argue that "[a]n 'order to stay' is not an 'order to pay.'"  ECF No. 13-1 at 1.  Courts, however, have consistently declared otherwise, holding that "financing goes hand-in-hand with pendent private-school placement."  M.R. v. Ridley Sch. Dist., 744 F.3d 112, 123 (3d Cir. 2014); see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S., 96 F.3d 78, 84 (3d Cir. 1996) ("It is undisputed that once there is state agreement with

6

respect to pendent placement, a fortiori, financial responsibility on the part of the local school district follows.").

Largely ignoring the implications of ALJ Burns' ruling, Defendants suggest instead that the "status quo" that must be maintained during the course of the administrative proceedings before the OAH are the conditions in place as of August 7, 2014, the date on which Plaintiffs filed their request for a due process hearing.[3]  ECF No. 13-1 at 11-14.  As of that date, A.B. was attending St. Elizabeth, but she was doing so at her parents' own expense.  Defendants maintain that "Plaintiffs already have their status quo" in that A.B.'s parents were paying for A.B. to attend St. Elizabeth when this legal dispute began and therefore they should continue to pay for her to do so at least until "there is a determination on the merits that BCBSC failed to provide [a Free Appropriate Public Education] and that A.B.'s placement at [St. Elizabeth] was appropriate." Id. at 13.  Had ALJ Burns not, in the interim, issued his ruling establishing St. Elizabeth as A.B.'s pendent educational placement, the Court would agree.  Where, as here, parents make

---

[3] Defendants also argue that the mediation agreement under which BCPSS agreed to pay A.B.'s tuition at St. Elizabeth for the 2013-14 school year does not obligate BCPSS to pay for the 2014-15 school year.  Id. at 14-15.  The Court agrees with that conclusion but notes that Plaintiffs were not relying on the mediation agreement in arguing their entitlement to tuition payments for the 2014-2015 school year.

7

a unilateral decision to place their child in in a private school, "the parents will be responsible for the costs of the child's new placement – at least initially." M.R., 744 F.3d at 118 (emphasis added).

Notwithstanding that initial status, under § 1415(j), "the new placement can become the educational setting protected by the stay-put rule if the parents and the 'State or local educational agency' agree to the change." Id. at 118-19 (citing 20 U.S.C. § 1415(j)). While A.B.'s parents obviously have yet to reach an agreement with BCPSS, courts have held and the regulations implemented under the IDEA mandate that:

> a decision favorable to the parents during the administrative review process 'must be treated as an agreement between the State and the parents.' 34 C.F.R. § 300.518(d). . . . Accordingly, an administrative ruling validating the parents' decision to move their child from an IEP-specified public school to a private school will, in essence, make the child's enrollment at the private school her "then-current educational placement" for purposes of the stay-put rule. Having been endorsed by the State, the move to private school is no longer the parents' unilateral action, and the child is entitled to "stay put" at the private school for the duration of the dispute resolution proceedings.

Id. at 119 (citing Raelee S., 96 F.3d at 83).

It is certainly true that, in most instances, the "decision favorable to the parents" that alters the pendent educational placement is a decision on the merits of the parents' claim that the school system's recommended placement fails to provide a

Free Appropriate Public Education and that the private school placement is appropriate.  Here, for whatever reason, ALJ Burns issued a separate preliminary ruling under the IDEA's stay put provision, with a ruling on the ultimate merits to come at some time in the next few months.  His stay put ruling is, nonetheless, a decision validating the parents' decision to place A.B. in St. Elizabeth, at least during this interim period.  He held, unequivocally that A.B. "gets to stay at St. Elizabeth School as appropriate under the stay put provision."  For this decision to have any meaning, it must bring with it a duty on the part of the school system to pay for that private school placement.  See Raelee S., 96 F.3d at 87 (noting that "[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private school placement amounts to no choice at all").

Under Defendants' "maintenance of the status quo" argument, ALJ Burns' decision had no significance, whatsoever.  Before his ruling, A.B. was attending St. Elizabeth at her parents' expense and, after his ruling, A.B. could continue to attend St. Elizabeth at her parents' expense. If the decision was to have no effect, why would Plaintiffs have bothered to file the motion?; why would BCPSS have bothered to oppose it?; and, why would the ALJ have bothered to issue his decision?  Although the

Court was not provided with the entire transcript of the argument on the motion before the ALJ, there is no indication that BCPSS argued or even suggested that the motion should be denied as a nullity.

Based upon the conclusion that ALJ Burns' November 3, 2014, ruling established St. Elizabeth as A.B.'s pendent educational placement, the Court will grant Plaintiffs' motion for preliminary injunction.  As to the scope of the relief to which Plaintiffs' are entitled, the Court is guided by Judge Deborah Chasanow's decision in Brett Y.  Under similar but not identical circumstances to those presented here, Judge Chasanow considered four distinct time periods for which relief could be given: (1) after the unilateral placement of the student in a private school but before the ALJ's decision establishing pendent placement; (2) after the ALJ's decision through the period in which the parents had already paid the private tuition; (3) after that last made payment through the end of the present school year; and, (4) after the present school year.  959 F. Supp. at 713 and n.5.  As to the first time period, the plaintiffs, like Plaintiffs here, made no argument that they were entitled, at that juncture, to reimbursement of expenses prior to the ALJ's ruling.  As to the second time period, Judge Chasanow concluded that requiring payment for those months would be more in the nature of reimbursement than injunctive relief.

As to the fourth period, the Court expressed no opinion as to "whether the ALJ's ruling can be said to constitute agreement by the State" as to the student's pendent placement beyond the current year.  Id. at 714.  Paralleling Judge Chasanow's ruling, the Court finds that Plaintiffs are entitled to a preliminary injunction requiring BCPSS to maintain A.B.'s placement at St. Elizabeth at BCPSS's expense through the remainder of the 2014-2015 school year.

Accordingly, IT IS this 4th day of February, 2015, by the United States District Court for the District of Maryland, ORDERED:

(1) That Plaintiffs' motion for preliminary injunction, ECF No. 3, is GRANTED;

(2) That BCPSS shall maintain A.B.'s current educational placement at the St. Elizabeth School at BCPSS's expense through the remainder of the 2014-2015 school year; and

(3) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge