IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

A.B. et al.                    *
                               *
v.                             *    Civil Action No. WMN-14-3851
                               *
THE BALTIMORE CITY BOARD       *
OF SCHOOL COMMISSIONERS et al. *
                               *

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court are two motions: (1) Defendants'[1] motion to dismiss portions of the Amended Complaint, ECF No. 46; and (2) Plaintiffs' "Motion to Enforce Procedural Safeguards to Maintain A.B.'s Placement at the Saint Elizabeth School," ECF No. 53. Upon review of the parties' submissions and the applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendants' motion will be granted in part and denied in part and Plaintiffs' motion will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff A.B. is a now 18-year-old student, diagnosed with Down Syndrome.  In June of 2013, she completed eighth grade at the Midtown Academy (Midtown), a Baltimore City charter school. At Midtown, A.B. was in a general education classroom, with

---

[1] Defendants in this action are: the Baltimore City Board of School Commissioners (the Board); Gregory Thornton, the Chief Executive Officer for Baltimore City Schools; and Kim Hoffman, the Executive Director, Special Education for Baltimore City Schools.

accommodations, and was in a high school diploma bound program.

Midtown only goes up through the eighth grade so, in the spring

of 2013, an Individualized Educational Program (IEP) team at

Midtown was formed to plan A.B.'s transition to high school.  On

June 7, 2013, the team finalized a draft IEP for the 2013-2014

school year recommending a private separate day school for A.B.

Although personnel from the central office of the Baltimore City

Public School System (BCPSS) had been invited to participate in

the IEP process, they did not do so prior to that date.

    After this draft IEP was sent to BCPSS's central office for

processing, BCPSS personnel rejected the recommendation of the

IEP team and demanded a new IEP meeting.  After several

additional meetings, BCPSS personnel agreed to continue A.B. in

a high school diploma bound program of study but rejected

placement in a private day school.  Instead, BCPSS personnel

recommended placement in a large comprehensive high school,

Mergenthaler Vocational-Technical High School.

    Plaintiffs, A.B.'s parents,[2] disagreed with this new IEP for

the 2013-2014 academic year and unilaterally placed A.B. in a

high school diploma track program at the Saint Elizabeth School

(SES), a state-approved, private special education school.  On

December 20, 2013, A.B.'s parents filed a request for mediation

---

[2] A.B.'s parents, C.B. and K.O, bring this action as next friends
of A.B. and on their own behalf.

to address their disagreements with the 2013-2014 IEP.  On
February 7, 2014, the parties entered into a Mediation Agreement
whereby BCPSS agreed to continue A.B. at SES for the 2013-2014
school year, to reimburse the parents for payments made since
September 3, 2013, and to assume responsibility for tuition
payments for the remainder of the 2013-2014 school year.

   During that year, BCPSS personnel observed A.B. at SES on
several occasions and participated in IEP meetings at SES to
revise A.B.'s IEP for the summer of 2014 and the 2014-2015
school year.  At a May 12, 2014, meeting, BCPSS unilaterally
determined that A.B. would be removed from the diploma bound
course of study and, instead, would be placed in a certificate
program because she was not acquiring high school credits at a
sufficient pace.  Under the IEP that came out of this series of
meetings, A.B. would be placed in a program with students that
are all on certificate tracks.  At the last meeting in the IEP
process which was held on May 21, 2014, BCPSS personnel refused
to discuss the particular school where the IEP would be
implemented.  Plaintiffs maintain that the selection of a
particular school was later made by a BCPSS administrator
outside of the IEP process and that they were prevented from
participating in that decision.  A.B.'s placement was determined
to be Claremont High School, a public separate day school.  In a
letter received by Plaintiffs' counsel on May 29, 2014, BCPSS

stated that it would no longer fund A.B.'s attendance at SES after June 20, 2014, the end of the 2013-2014 school year.

Plaintiffs enrolled A.B. at SES at their own expense for the 2014-2015 school year which began on July 7, 2014.  There, she continued in a diploma bound track.  Plaintiffs report that during the 2014-2015 school year, A.B. received educational benefit at SES, taking credit bearing diploma bound courses and receiving vocational training.

On August 7, 2014, Plaintiffs filed a request for a due process hearing with the Maryland Office of Administrative Hearings (OAH).  A.B. v. Baltimore City Pub. Sch. Sys., OAH Case. No. MSDE-CITY-OT-14-27815.  Along with the request for a due process hearing, Plaintiffs also filed a "Motion for Enforcement of Procedural Safeguards" in which they sought an order requiring BCPSS to fund and maintain A.B. at SES during the pendency of those proceedings.  BCPSS opposed Plaintiffs' Motion for Enforcement of Procedural Safeguards and a hearing was held on that motion before Administrative Law Judge (ALJ) Michael W. Burns on November 3, 2014.  After hearing argument from the parties, ALJ Burns issued an opinion from the bench. He stated that the Plaintiffs' "motion for procedural safeguards is granted to the extent stay put provision of federal law and regulation is to be enforced" and "the student gets to stay at St. Elizabeth School as appropriate under the stay put

4

provision." ECF No. 6-1 at 29-30. As previously noted by this
Court, ALJ Burns' decision as to BCPSS's obligation to fund
A.B's placement at SES was not as clear as it could have been.
ECF No. 48 at 3. While he stated that he expected that BCPSS
would not raise any issue as to meeting that obligation, he also
stated that he did not believe he had the authority to order it
to do so.

As also previously noted by this Court, there is no
question that BCPSS understood, or should have understood, that
ALJ Burns' order designating SES as A.B.'s stay-put placement
was also an order for BCPSS to pay for that placement. Id. at
3-4. Nonetheless, BCPSS refused to cover A.B.'s tuition at SES.
After several attempts on the part of Plaintiffs' counsel to
contact counsel for BCPSS and confirm BCPSS's intent to comply
with its obligations, BCPSS counsel finally responded on
November 29, 2014, stating that BCPSS would not be rendering any
payments for A.B. at SES. Plaintiffs then filed this suit on
December 10, 2014, along with a motion for a preliminary
injunction. On February 4, 2015, this Court granted that motion
and issued an order stating "[t]hat BCPSS shall maintain A.B.'s
current educational placement at [SES] at BCPSS's expense
through the remainder of the 2014-2015 school year." ECF No. 17
at 11.

Defendants filed an appeal of that decision two days later. Defendants also filed a motion in this Court seeking a stay of the order requiring them to make tuition payments.  ECF No. 23. On March 20, 2015, while the appeal was still pending in the Fourth Circuit but before the motion to stay was ripe in this Court, ALJ Burns issued his decision on the merits in the underlying due process proceeding, ruling in BCPSS's favor and concluding that Plaintiffs had failed to establish that the IEP offered by BCPSS for the summer of 2014 and the 2014-2015 school year was not reasonably calculated to offer A.B. a free appropriate public education (FAPE).  Defendants' response to ALJ Burns' ruling was to file, on March 27, 2015, a motion in this Court seeking relief from the February 4, 2015, Order requiring BCPSS to cover A.B.'s tuition at SES.  ECF No. 28. Defendants also dismissed their appeal of this Court's February 4, 2015, Order and, in light of that dismissal, this Court, on May 1, 2015, denied as moot Defendants' motion for a stay pending appeal.  See ECF No. 40.

Also apparently in response to ALJ Burns' final decision, Defendant Hoffman sent a letter to Plaintiffs on April 2, 2015, advising Plaintiffs that A.B. was being reassigned from SES to Claremont High School, effective April 13, 2015.  On April 14, 2015, a bus was sent to pick up A.B. to take her to Claremont. On April 15, 2015, BCPSS personnel contacted Plaintiffs and

advised that they would be sending another bus on April 16, 2015, to take A.B. to Claremont.  Plaintiffs, however, continued to send A.B. to SES.

Defendant Hoffman took these actions in what seems to be a total disregard of this Court's order of February 4, 2015, requiring BCPSS to maintain A.B.'s current educational placement at SES and at BCPSS's expense throughout the remainder of the 2014-2015 school year.  Defendants' motion for relief from that order was still pending and did not become ripe until April 30, 2015, when Defendants filed their reply memorandum.  The Court denied that motion on June 9, 2015.  While it denied the motion, the Court also pointed out that the scope of the preliminary injunction order had been expressly limited to the remainder of the 2014-2015 school year.

In the meantime, on April 27, 2015, Plaintiffs filed a motion for leave to file an amended complaint.  ECF No. 36. Defendants had filed a motion to dismiss the original Complaint, ECF No. 14, primarily on the ground that Plaintiffs had failed to exhaust their administrative remedies in that ALJ Burns had yet to render his final decision when they filed that Complaint. In their proposed Amended Complaint, Plaintiffs were able to resolve that alleged deficiency, add their objections to ALJ Burns' rulings, and update the Complaint with more recent allegations, including Defendant Hoffman's disregard for this

Court's order.  On May 12, 2015, the Court granted Plaintiffs'
motion for leave to file the Amended Complaint and denied
Defendants' motion to dismiss the original Complaint as moot.
ECF No. 44.

Also on May 12, 2015, the parties convened an IEP meeting
to consider A.B.'s placement for the 2015-2016 school year.
Instead of holding the meeting at SES, as would typically be
done for students attending SES so that current teachers could
more easily participate, BCPSS convened the meeting at its
central offices.  According to Plaintiffs, BCPSS personnel also
generally ignored the information provided them concerning
A.B.'s progress at SES and refused to discuss any updates or
revisions to A.B.'s IEP.  On May 19, 2015, Plaintiffs received
an IEP from BCPSS, marked as approved and dated May 12, 2015.
This IEP was virtually identical to the IEP for the 2014-2015
school year.  BCPSS has also advised Plaintiffs that it did not
believe it is obligated to maintain A.B. at SES for the 2015-
2016 school year.

Invoking the "stay-put" provision of the Individuals with
Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j),
Plaintiffs have filed a motion for an injunction to maintain
A.B.'s placement at SES at BCPSS's expense for the coming year.
ECF No. 53.  The motion states that the 2015-2016 school year at
SES commenced on July 6, 2015, but the motion was not filed

until July 2, 2015.  This motion did not become ripe until
August 3, 2015, when Plaintiffs filed their reply memorandum.

Defendants' motion to dismiss portions of the Amended
Complaint is also now ripe.  The Amended Complaint contains four
counts.  Count I is a claim under the IDEA and asserts that
Defendants committed multiple procedural errors which resulted
in a substantive failure to provide A.B. with a FAPE for the
summer of 2014 and the 2014-2015 school year.  Count II is also
a claim under the IDEA and asserts that Defendants violated the
"stay-put" provisions of the IDEA by refusing to maintain A.B.
at SES during the 2014-2015 school year.  Defendants acknowledge
that the allegations in the Amended Complaint, if founded,
"would clearly support a finding that A.B. was deprived a FAPE
under the IDEA," ECF No. 46-1 at 10, and make no arguments that
Counts I or II should be dismissed.

In Count III, Plaintiffs assert that Defendants, in
violation of Section 504 of the Rehabilitation Act of 1973
(Section 504), 209 U.S.C. § 794 et seq., and the Americans with
Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq.,
discriminated against A.B. on the basis of her disability and
retaliated against them for asserting their rights under federal
law.  In relation to this claim, Plaintiffs seek damages under
42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988.  In
Count IV, Plaintiffs also seek damages under § 1983 and

9

attorney's fees under § 1988 based upon Defendants' alleged failure to comply with the procedural safeguards of the IDEA, specifically, their failure to maintain A.B. at SES during the 2014-2015 school year despite ALJ Burns' order that they do so. Defendants have moved to dismiss Counts III and IV in their entirety.

## II. MOTION TO DISMISS

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Such determination is a "context-specific task," Iqbal, 556 U.S. at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "[A] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Such deference, however, is not accorded to labels and legal conclusions, formulaic recitations of the

elements of a cause of action, and bare assertions devoid of further factual enhancement.  Iqbal, 556 U.S. at 678.

### B. Count III – Section 504 and ADA claims

The Board acknowledges that, as a recipient of federal funds, it is subject to suit under Section 504 and, as a public entity, it is subject to suit under the Title II of the ADA. ECF No. 46-1 at 8 (citing 29 U.S.C. § 794(a) and 42 U.S.C. § 12132).  To establish liability for discrimination under these provisions, "a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified for the benefit in question; and (3) her disability was a motivating factor in her exclusion from the benefit (Title II) or the sole reason for her exclusion from the benefit (§ 504)."  Shepard v. Irving, 77 Fed. App'x 615, 622 (4th Cir. 2003) (citing Baird v. Rose, 192 F.3d 462, 467, 470 (4th Cir. 1999)).  There is no dispute that A.B. has a disability.  Plaintiffs maintain that A.B. was otherwise qualified to continue in a diploma bound course of study but was denied that opportunity because of her disability.  Plaintiffs assert that, unlike disabled students, when non-disabled students do not acquire credits toward graduation at a sufficient pace, they are offered a variety of credit recovery opportunities, including earning credits in summer or evening school, tutoring sessions, and through on-line courses.

To prove disability discrimination in the education
context, however, the Fourth Circuit requires that something
more be shown than a mere failure to provide the FAPE required
by the IDEA.  Sellers v. Sch. Bd. of Mannassas, Va., 141 F.3d
524, 529 (4th Cir. 1998).  In this context, "either bad faith or
gross misjudgment" on the part of the school system must be
shown to establish a discrimination claim.  Id.[3]  This additional
showing "is justified by the delicate role that courts play in
reviewing education decisions."  K.D. ex rel. v. Starr, 55 F.
Supp. 3d 782, 789 (D. Md. 2014).

At this stage of the litigation, the Court finds that
Plaintiffs' allegations are sufficient to permit the
discrimination claims to go forward.  Plaintiffs allege a
pattern of Defendants refusing to meaningfully participate in
the IEP process, ignoring the input of A.B.'s teachers at SES,
and making unilateral decisions outside of the IEP process.

---

[3] Defendants suggest, at least in their motion, that decisions of
the Supreme Court issued after the Fourth Circuit's decision in
Sellers have modified the requisite showing and suggest that, to
prove discrimination in the education context, plaintiffs must
show "'intentional discrimination' which, at a minimum, requires
proof of 'deliberate indifference.'"  ECF No. 46-1 at 9-10
(citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274
(1998) and Barnes v. Gorman, 536 U.S. 181 (2002)).  The Court
finds these cases inapposite and notes that the Fourth Circuit
has continued to apply the "bad faith or gross misjudgment"
standard post Gebser and Barnes.  See, e.g., J.S. ex rel. Duck
v. Isle of Wight Cnty. Sch. Bd., 402 F.3d 468, 481 (4th Cir.
2005).  Furthermore, Defendants seem to have abandoned this
suggestion in their Reply.  See ECF No. 54 at 5 (arguing from
the unmodified Sellers standard).

Perhaps most concerning is Defendant Hoffman's blatant disregard of an order of this Court. Although there may be other explanations for Defendants' course of conduct, a jury could find evidence of bad faith in this pattern of behavior. See N.T. v. Balt. City Bd. of Sch. Comm'rs, Civ. No. JKB-11-356, 2011 WL 3747751, at *7-*8 (D. Md. Aug. 23, 2011) ("[A] jury could reasonably infer that the abrupt decisions to discontinue significant parts of [the student's] educational program, without proper assessment and evaluations, were made in bad faith or were gross misjudgments.").

Defendants argue in support of dismissing this claim that "Plaintiffs [sic] claim . . . completely ignores that under 34 CFR § 104.33(b)(2) the duty to provide a free appropriate public education under section 504 is per se satisfied by the implementation of a compliant IEP under the IDEA." ECF No. 54 at 7 (emphasis added). While the IEP may be found to be compliant, that is not yet established. Defendants also argue that the fact that the "decision by A.B.'s IEP team does not grossly 'depart grossly [sic] from accepted standards among educational professionals' or 'substantial[ly] depart[] from accepted professional judgment, practice, or standards' would seem to be evident from the fact that OAH issued a decision on March 20, 2015, holding that A.B.'s IEP was reasonably calculated to provide FAPE." Id. (quoting Monahan v. Nebraska,

13

687 F.2d 1164, 1171 (8th Cir. 1982)).  Again, while ALJ Burns'
final decision may be found to be correct, that determination
has also yet to be made.

In Count III, in addition to their discrimination claims,
Plaintiffs assert claims of retaliation under the ADA and
Section 504.  Title II of the ADA provides that "[n]o person
shall discriminate against any individual because such
individual has opposed any act or practice made unlawful by this
chapter."  42 U.S.C. § 12203(a).  Although Section 504 does not
proscribe retaliation per se, it incorporates the remedies
applicable under the ADA, including the ADA's anti-retaliation
provision.  Wonasue v. Univ. of Maryland Alumni Ass'n, 984 F.
Supp. 2d 480, 491 (D. Md. 2013).  "In order to establish a prima
facie case of retaliation, a plaintiff must allege (1) that she
has engaged in conduct protected by the ADA; (2) that she
suffered an adverse action subsequent to engaging in the
protected conduct; and (3) that there was a causal link between
the protected activity and the adverse action."  Freilich v.
Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir.
2002).  To constitute an adverse action, the action must be
"materially adverse, that is, harmful to the point that it could
well dissuade an individual of ordinary firmness from engaging
in protected activity."  M.A. v. New York Dept. of Educ., 1 F.

14

Supp. 3d 125, 149-50 (S.D.N.Y. 2014) (internal quotations and
citations omitted).

There is no dispute that Plaintiffs engaged in protected
conduct when they filed their due process complaint. As
retaliatory conduct, however, Plaintiffs point only to Dr.
Hoffman's sending of the bus and letter in April of 2015. ECF
No. 52 at 11-12. Defendants suggest that this alleged conduct
does not rise to the level of an adverse action. ECF No. 54 at
9. The Court must agree. While Dr. Hoffman's hasty conduct
might be evidence of bad faith (or simply insufficient advice
from counsel), it did not materially affect Plaintiffs. They
apparently ignored it and continued to send A.B. to SES. Thus,
to the extent that Plaintiffs are asserting any retaliation
claim in Count III, the motion to dismiss will be granted.

Defendants have also moved to dismiss the Section 504 and
ADA claims brought against the Individual Defendants, Thornton
and Hoffman, in both their individual and official capacities.
There is clearly no individual capacity liability under either
statute. See Young v. Barthlow, Civ. No. RWT-07-662, 2007 WL
5253983, at *2 (D. Md. Nov. 7, 2007) (noting that individual
liability is precluded under ADA Title II and Section 504). As
to claims brought against them in their official capacities,
Defendants contend that such claims should be dismissed as
redundant to the claims brought against the Board. This Court

has so held in similar circumstances.  See Adams v. Montgomery College, 834 F. Supp. 2d 386, 396 (D. Md. 2011) (concluding that because the plaintiff stated a valid claim against the defendant college, "there is thus no need to pursue a claim against" the individual defendants in their official capacities).  Plaintiffs counter that, because they are seeking injunctive relief as well as damages, they should be permitted to maintain the official capacity claims against Thornton and Hoffman.  The injunctive relief that they are seeking, however, is all relief that would be provided by the Board.  See Prayer for Relief, Am. Compl. at 30.

### C. Section 1983 claim (Count IV)

While not clear from the Amended Complaint, in their Opposition, Plaintiffs limit their § 1983 claim to a claim against Defendant Hoffman in her individual capacity for her "discriminatory, retaliatory and harassing conduct in violation of the constitution and three (3) federal laws: the IDEA, Section 504 of the Rehabilitation Act of 1973, and Title II of the ADA" and her "deprivation of A.B.'s procedural protections as guaranteed by the IDEA."  ECF No. 52 at 15, 16.  As the discriminatory, retaliatory, and harassing conduct, Plaintiffs again point to Hoffman's sending of the bus and letter in April 2015.  Id.  As the deprivation of procedural protections, Plaintiffs assert that Hoffman refused to implement the ALJ's

decision that SES was A.B.'s current educational placement under the IDEA's stay-put provision.  Id. at 16.

Defendants move to dismiss any § 1983 claim in the Amended Complaint under the general rule announced by the Fourth Circuit in Sellers that, "[b]ecause IDEA provides a comprehensive remedial scheme for violations of its own requirements, . . . parties may not sue under section 1983 for an IDEA violation." 141 F.3d at 529; see also J.S., 402 F.3d at 479 (reaffirming this holding of Sellers).  In announcing this rule, the Fourth Circuit "was concerned with preventing an 'end run' around the comprehensive procedures provided by the IDEA to remedy violations of its own requirements." M.S. v. Fairfax Cnty. Sch. Bd., Civ. No. 05-1476, 2006 WL 721372 (E.D. Va. Mar. 20, 2006) (citing J.S., 402 F.3d at 480).  Plaintiffs attempt to fit their claim into a limited exception to this general rule which was recognized by the Fourth Circuit in Robinson v. Pinderhughes, 810 F.2d 1270 (4th Cir. 1987).  This Court finds that Plaintiffs' § 1983 claim falls within the rule, not the exception, and therefore, should be dismissed.

In Robinson, the Fourth Circuit held that the plaintiffs could assert a § 1983 claim for a violation of the precursor to the IDEA, the Education of the Handicapped Act (EHA), where the school system declined to implement a final order of the administrative hearing officer.  810 F.3d at 1275.  The court

17

reached this result, however, based on the fact that the EHA did
not contain any provision for enforcing final administrative
orders.  Id. at 1273.  Here, the IDEA provides the requisite
enforcement remedies and Plaintiffs have invoked those very
remedies in this action.  The only "final order" of ALJ Burns
that Plaintiffs sought to enforce is his stay-put order of
November 3, 2014, and Plaintiffs came into this Court, under the
IDEA, and had that order enforced, at least as to the 2014-2015
school year.  The question of whether that order has
implications going forward is the subject of Plaintiffs' motion
for injunctive relief which is also brought under the provisions
of the IDEA and to which the Court now turns.

## III. MOTION FOR INJUNCTIVE RELIEF

The "stay-put" provision of the IDEA provides that
"[d]uring the pendency of any proceedings conducted pursuant to
this section, unless the State or local educational agency and
the parents or guardian otherwise agree, the child shall remain
in the then current educational placement of such child."  20
U.S.C. § 1415(j); see also, 34 C.F.R. § 300.518(a) (providing
similarly that "during the pendency of any administrative or
judicial proceeding regarding a due process complaint notice
requesting a due process hearing under § 300.507, unless the
State or local agency and the parents of the child agree
otherwise, the child involved in the complaint must remain in

his or her current educational placement"). The Fourth Circuit, and other courts as well, have determined that this stay-put provision applies throughout the course of the administrative proceedings as well as any subsequent judicial review. A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 372 F.3d 674, 684 n.11 (4th Cir. 2004) (citing Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 6 (1st Cir. 1999)); M.R. v. Ridley Sch. Dist., 744 F.3d 112, 125-26 (1st Cir. 2014). In addition, courts have recognized that if the current educational placement is determined to be a private school, financing of that private school placement by the school system goes "hand-in-hand" with that placement. M.R., 744 F.3d at 123. This Court holds that, in that ALJ Burns made the determination in the November 3, 2014, Hearing that SES was A.B.'s current educational placement,[4] with that determination comes the obligation on the part of BCPSS to fund that placement during the pendency of any judicial proceedings.

The Court notes that when the issue of A.B.'s stay-put placement was first presented to this Court with Plaintiffs' motion for a preliminary injunction, the administrative

---

[4] ALJ Burns' determination of "current educational placement" was made under 34 C.F.R. § 300.518(a). To the extent that the Court's ruling on Plaintiffs' preliminary injunction motion could be read to imply that his decision was made under another subsection of that regulation, § 300.518(d), that would be incorrect.

proceedings before the OAH were still proceeding and the limited
record provided to this Court from the November 3, 2014, Hearing
left the impression of some confusion on the part of counsel as
to the import of the ALJ's ruling.  See 11/3/2014 Tr. at 30-32
(BCPSS and Plaintiffs' counsel both asking for clarification of
the ruling).  The Court limited its preliminary injunction order
to the 2014-2015 school year expecting that the parties might
seek some further clarification from ALJ Burns.  Apparently they
did not and ALJ Burns, in his final order, simply noted that he
had previously "granted the Motion for Enforcement – to the
extent that the Student was ordered to remain at her current
placement, SES."  ECF No. 28-1 at 3.

When the Court next addressed the scope of BCPSS's
obligation to fund placement at SES, it was in the context of
Defendants' Motion for Relief from the Court's order granting
the preliminary injunction.  Because the preliminary injunction
order only mandated funding for the 2014-2015 school year,
Defendants' motion and the Court's ruling on that motion only
addressed funding for that school year.  While the Court
questioned if the obligation should be continued beyond the
current school year, it also noted that that issue was not
before the Court at that time.  ECF No. 48 at 7-8.  Now that the
issue is before the Court, it concludes that, consistent with
"Congress's conclusion that a child with a disability is best

served by maintaining her educational status quo until the disagreement over her IEP is resolved," M.R., 744 F.3d at 118, BCPSS's obligation should not be limited to the previous school year.  Although the Court still believes that ALJ Burns' less-than-precise ruling could be read to have been limited to the school year,[5] on further reflection, the Court concludes that, consistent with the purpose of the IDEA's stay-put provision, his determination that SES was her current educational placement must be given effect beyond that school year.

While the Court's conclusion is based upon ALJ Burn's stay-put ruling, it is also bolstered by arguments and concessions made by Defendants in opposing the instant motion.  Citing N.W. ex rel. J.W. v. Boone Cnty. Bd of Educ., 763 F.3d 611, 617 (6th Cir. 2014), Defendants contend that the term "current educational placement" in 300.518(a) means the "last agreed upon placement in a child's IEP."  ECF No. 55 at 9.  Defendants then maintain that "there is no dispute that A.B.'s last implemented IEP provided for A.B.'s attendance at Midtown Academy for the 2012-2013 school year."  Id. at 10.  The Court notes that, under that IEP, A.B. was in a high school diploma bound program in a general education classroom.  While contesting the relevancy,

---

[5] See 11/3/14 Tr. at 30 (in answer to BCPSS's counsel's question as to his ruling, ALJ Burns responds, "For the school year. Her – her current school remains St. Elizabeth.  That's where she is going.  That is where stay put requires her to be.").

Defendants do not contest and essentially concede that "it may be true [] that SES is the only available program that offers the services contained in A.B.'s last agreed upon IEP."  Id. Certainly, the placement for which they are advocating – the certificate program at Claremont - does not offer the same educational environment as the placement provided for in the 2012-2013 IEP.  In that the Fourth Circuit has recognized "that the term 'educational placement' as used in the stay-put provision refers to the overall educational environment rather than the precise location in which the disabled student is educated," A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 372 F.3d 676 (4th Cir. 2004), Defendants' own concessions support the conclusion that SES was properly deemed A.B.'s stay-put.

Defendants also at least implicitly acknowledge that, regardless of whether SES was A.B's "current educational placement" prior to ALJ Burns' ruling, it became so as a result of his ruling.  ECF No. 55 at 11 (arguing that "SES was not A.B.'s 'current educational placement' within the meaning of 34 C.F.R. § 300.518(a) prior to ALJ Burns' 'stay put' ruling on November 3, 2014").  While Defendants devote much of their Opposition to the instant motion to arguments that ALJ Burns' stay-put ruling had a "questionable legal and factual basis," id. at 16, Plaintiffs note that Defendants never appealed or filed a cross claim directly challenging ALJ Burns' stay-put

ruling.  Instead, they simply tried to ignore the implications
of that ruling.

The Court is cognizant that ALJ Burns made his decision on
"current educational placement" based on the February 7, 2014,
Mediation Agreement under which BCPSS agreed to fund A.B. at SES
for the 2013-2014 school year, and not based on the 2012-2013
IEP.  Plaintiffs acknowledge that "reasonable parties may have
disagreed" as to that determination.  ECF No. 56 at 9.
Nevertheless, that was his determination and Defendants did not
appeal it.  In an argument related to the Mediation Agreement,
Defendants point to a footnote in the Court's preliminary
injunction order and argue that it is the "law of the case" that
"the Mediation Agreement which bound the Board to pay A.B.'s
tuition at SES for the 2013-3014 school year was not the source
of an agreement to change A.B.'s placement to SES."  ECF No. 55
at 8 (citing ECF No. 17 at 7 n.3).  What the Court stated in
that footnote was simply that it agreed that BCPSS's obligation
to pay for the 2014-2015 school year did not arise from the
Mediation Agreement, it arose from ALJ Burns' determination of
A.B.'s current educational placement.

**IV. CONCLUSION**

For the reasons stated above, the Court: (1) will dismiss
Count III of the Amended Complaint as to Defendants Thornton and
Hoffman and to the extent it purports to assert a claim of

23

retaliation; (2) will dismiss Count IV in its entirety; but (3) will otherwise deny Defendants' motion.  The Court will also grant Plaintiffs' Motion to Enforce Procedural Safeguards and will order BCPSS to maintain A.B. at SES during the course of these proceedings.  Finally, with the resolution of these motions, the Court would like to move forward with the resolution of Plaintiffs' remaining claims as expeditiously as possible.  While some discovery can be permitted in IDEA cases, it is not as extensive as in other civil actions.  Accordingly, the Court asks that the parties meet and confer and submit a proposed schedule for any discovery and the briefing of dispositive motions.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


August 13, 2015